| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
| --- | --- | --- |

| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-182(1) |
| | § | |
| MARCO PEDRO ALONSO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Marco Pedro Alonso's ("Alonso") *pro se* Motion

to Reduce Sentence (#71), wherein Alonso requests that the court reduce his sentence under 18

U.S.C. § 3582(c)(1)(A).  Alonso identifies the Coronavirus Disease 2019 ("COVID-19") as an

extraordinary and compelling reason justifying his release.  United States Probation and Pretrial

Services ("Probation") has conducted an investigation and recommends that the court deny the

motion.  Having considered the motion, Probation's recommendation, and the applicable law, the

court is of the opinion that the motion should be denied.

I.      Background

On October 14, 2015, a federal grand jury in the Eastern District of Texas, returned a

single-count Superseding Indictment charging Alonso in Count One with Conspiracy to Possess

With Intent to Distribute Heroin, in violation of 21 U.S.C. § 846.  According to his Presentence

Investigation Report ("PSR"), Alonso served as a source of supply of heroin for other members

of the conspiracy and was found responsible for a total of 81.2 grams of heroin, 2.4 grams of

cocaine, and 70.5 alprazolam pills as well as $15, 795 in drug proceeds that were seized during

the investigation.  Pursuant to a non-binding plea agreement, Alonso entered a plea of guilty as

to Count One, and on February 22, 2017, he was sentenced to 71 months' imprisonment followed

by 3 years' supervised release.   Alonso is currently housed at USP Canaan in Waymart,

Pennsylvania.

II.      Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First

Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C.

§ 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term

of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that extraordinary and compelling reasons
> warrant such a reduction; or the defendant is at least 70 years of age, has served
> at least 30 years in prison, pursuant to a sentence imposed under section 3559(c),
> for the offense or offenses for which the defendant is currently imprisoned, and a
> determination has been made by the Director of the [BOP] that the defendant is not
> a danger to the safety of any other person or the community, as provided under
> section 3142(g); and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking

compassionate release.  *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb.

27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3

(S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant

compassionate release.").  The First Step Act amended § 3582(c) by providing a defendant the

means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at \*1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at \*2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at \*2; *Raia*, 954 F.3d at 597.

Here, Probation reports that on May 19, 2020, Alonso filed a request for compassionate release with the warden of his facility, and that on May 27, 2020, the warden denied Alonso's request because he was "found guilty of Assaulting without Serious Injury on January 23, 2020"; his request did not identify extraordinary circumstances to justify his early release; and he poses a risk of danger to the community. Thus, Alonso appears to have complied with the exhaustion requirement before filing the instant motion; however, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

Alonso's request for compassionate release potentially falls into the fourth catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Alonso maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates.  Probation reports that there are no current inmates or staff that are positive for COVID-19 at the facility where he is housed.  Although Alonso, age 25, expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19

in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at \*3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at \*5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at \*5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Alonso has failed to establish any reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served.

In addition, Alonso's PSR reveals that he has prior convictions for disorderly conduct, possession of marijuana, evading arrest or detention (2), possession with intent to deliver cocaine (2), possession with intent to deliver heroin, and evading arrest or detention with a vehicle.  He also failed to comply with a previous term of probation, was on probation at the time of the offense of conviction, and has a history of substance abuse.  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).  In view of Alonso's extensive criminal history, the court cannot conclude that he would not pose a danger to any other person or to the community, if released.  In fact, Alonso's request to the warden was denied in part because the BOP determined he poses a risk of danger to the community.

6

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See Collins*, 2020 WL 1929844, at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 4,217 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney

General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Alonso's track record is similarly a poor one.

In short, Alonso has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances").  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Id.*

III.   Conclusion

In accordance with the foregoing analysis, Alonso's Motion (#71) is DENIED.

SIGNED at Beaumont, Texas, this 15th day of June, 2020.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE